James H. WHITE, Trustee in Bankruptcy for Las Olas Inn Corporation, Bankrupt, Appellant,

v.

Francis J. MURTHA et al., Appellees.

No. 20985.

United States Court of Appeals Fifth Circuit.

April 5, 1965.

Rehearing Denied April 30, 1965.

J. Edward Worton, Miami, Fla., for appellant.

Robert C. Ward, Miami, Fla., for appellees.

Before TUTTLE, Chief Judge, and JONES and GEWIN, Circuit Judges.

JONES, Circuit Judge.

Vaughan Connelly was the owner of the Everglades Hotel in Miami, Florida. It was leased to Las Olas Inn Corporation, which was controlled by Connelly. Connelly gave a mortgage to the Trustees of a Teamsters Union Pension Fund, of which Francis J. Murtha is a Trustee. There was a default in the meeting of the mortgage payments and the mortgagee instituted a foreclosure suit in the United States District Court for the Southern District of Florida. While the foreclosure suit was pending, a petition was filed in the District Court under Chapter XI of the Bankruptcy Act by Connelly, Las Olas Inn Corporation and another corporation. The court approved the petition and continued Connelly in possession of the hotel property as well as his own assets and those of the other corporation. The mortgagee was permitted to proceed with the foreclosure and a final decree was entered directing a sale of the mortgaged property by a special master. At the foreclosure sale the mortgagee was the high bidder. On December 12, 1960, the court entered an order confirming the sale and directing that possession be delivered to the Pension Fund as purchaser of the property.

A few weeks after the foreclosure sale, Las Olas Inn Corporation was adjudicated a bankrupt and James H. White was elected and confirmed as its Trustee. The Bankruptcy Trustee filed a petition in the bankruptcy proceeding for an order directing the Pension Fund Trustees to turn over property claimed for the bankrupt estate which, the Bankruptcy Trustee claimed was appropriated by the Pension Fund Trustees when they took over the property purchased under the foreclosure sale. A hearing was had and the Referee determined that he had summary jurisdiction and directed that the Pension Fund Trustees turn over to the Bankruptcy Trustee the sum of $8,452.55 for food and beverage inventory on the date of transfer of possession, $3,622.05 representing cash on hand, $1,666.00 as the pro rata value of beverage licenses, $47,744.91 for accounts receivable accrued before but collected after the transfer of possession, and $10,333.46 representing the value of hotel furniture sold from the hotel premises by the Pension Fund Trustees subsequent to the transfer. The petition also sought to require the Pension Fund Trustees to turn over the unsold furniture and furnishings of the hotel or to pay the value thereof which was alleged to be $38,228.48.

The Referee ruled with the Bankruptcy Trustee. On review, the district court sustained the Referee in his determination that there was summary jurisdiction, and in his holding that the value of the food and beverage inventories, cash, and the proceeds of receivables were not acquired under the foreclosure sale and were a part of the bankrupt estate. The court decided that the Pension Fund Trustees could set-off against the sums found owing by them any amounts which the Pension Fund had paid, after taking possession of the hotel, in discharging obligations incurred by Connelly while he was debtor in possession during the pendency of the Chapter XI proceeding. The district court reversed that part of the Referee's ruling which held that the hotel furniture and furnishings were not acquired by the Pension Fund at the foreclosure sale. The order of the district court also determined that the foreclosure decree and

order of confirmation were res judicata as to the inclusion of the furniture and furnishings in the forecolsure. From this order the Bankruptcy Trustee has appealed, and on appeal contends that the district court erred in its rulings (a) that the amount of the Connelly obligations could be set-off, (b) that the furniture and furnishings were included in the foreclosure, and (c) that the foreclosure is res judicata as to the furniture and furnishings.

■ The Trustee challenges the allowance by the district court of a set-off against the Pension Fund's liability to the Bankruptcy Trustee for amounts paid by the Pension Fund in satisfaction of operating expenses incurred by Connelly as debtor in possession under the Bankruptcy. Such expenses would normally be entitled to a first-priority status as expenses of administration of the bankrupt estate. Ingels v. Boteler, 9th Cir. 1938, 100 F.2d 915, aff'd., 308 U.S. 57, 60 S.Ct. 29, 84 L.Ed. 78, rehearing denied 308 U.S. 521, 60 S.Ct. 29, 84 L.Ed. 442.

The district court determined that the Referee had failed to allow the Pension Fund to set-off the expenditures against its liability to the Trustee, and in his order reversing the Referee, directed that he should:

"A.  Give full, direct set-off against the amount of the liquor inventory for any liquor bills paid by the Petitioners, which were incurred by Vaughan B. Connelly debtor in possession; and because such payment was required under beverage Laws of State of Florida.

"B.  Determine whether other amounts paid by Petitioners would fall into the classification of expenses of administration, as defined in the Bankruptcy Act, and if same are expenses of administration, then allow a direct setoff for said amount against the total amount due the Trustee in Bankruptcy; and

"C.  Any sums paid which do not fall within the category of expenses of administration would then become a general claim against the estate of the Bankrupt, Las Olas Inn Corporation."

The liabilities incurred by the debtor in possession for liquor were no different in character from many of the other liabilities, such as accrued wages. The Florida beverage law to which the district court referred is contained in Section 561.42 of the Florida Statutes, F.S.A. which provides that if a vendor does not remit payment for liquor by the tenth day succeeding the calendar week in which such liquor was purchased, the beverage department, after notice and hearing, shall prohibit further sales of liquor to the vendor. Thus, the satisfaction of outstanding liquor bills was necessary if the Pension Fund desired to continue operating the hotel, just as the satisfaction of employees' demands for back wages was necessary.[1]

■ The Bankruptcy Trustee objects to the allowance of the set-off on the basis that Connelly, as debtor in possession, did not obtain specific authorization from the court before incurring the various liabilities. Although it is true that such authority was not specifically granted, we do not think it was necessary with respect to such ordinary operating expenses as liquor inventory, fire insurance and wages. The debtor in possession was authorized to operate the business, and such operation is under the control of the court, and the debtor in possession limited in his use of the property. 8 Collier on Bankruptcy § 6.30[4]. However, as has been many times said, bankruptcy is equitable, and it would be contrary to equitable doctrines to so construe the stated principle as to require that a debtor in possession must petition the court for authorization for every

---

1.  There was evidence that the hotel employees would strike if their demands for back wages were not met.

expense incident to the operation of the business.

The Bankruptcy Trustee next contends that the Pension Fund is a volunteer, and that since it did not seek authorization before satisfying the obligations of the bankrupt estate, it cannot now obtain a right of a set-off for those amounts. Perhaps a better procedure would have been to petition to the district court before payment of the claims, but under these circumstances, and in the absence of prejudice, we do not think that the practice followed was such as to preclude the reimbursement of the Pension Fund. The cases of In Re American Cooler Co., Inc., 2nd Cir. 1942, 125 F.2d 496, and In Re Avorn Dress Co., Inc., 2nd Cir. 1935, 79 F.2d 337, are factually dissimilar and are not here persuasive. Both of those cases were concerned with unauthorized loans by the debtor in possession during the operation of the business, and not with ordinary operating expenses.

The Bankruptcy Trustee correctly states the proposition that the basic purpose of the Bankruptcy Act is to insure the ratable distribution of the assets among all the creditors. This purpose will in no way be defeated by the allowance of a set-off to the Pension Fund for amounts that are properly classified as expenses of administration.

The Pension Fund has argued that the question of the allowance of a set-off is prematurely brought, since the Referee did not determine any specific amounts to be set off against the Pension Fund's liability to the Trustee. The issue we resolve, however, is whether such set-offs for liabilities necessary for the operation of the business pending administration of the estate, incurred by the debtor in possession and subsequently paid by the Pension Fund, are properly allowed. We hold that they are. See In Re Industrial Sapphire Mfg. Co., 3rd Cir. 1950, 182 F.2d 591. The appropriate amount of such set-offs cannot be and is not determined on the basis of the record before us. A determination

should be made upon remand as to which amounts paid by the Pension Fund are properly classified as expenses of administration, and a corresponding set-off should be allowed against its liability to the Bankruptcy Trustee.

We next consider whether the furniture and furnishings located in the hotel were encumbered by the mortgage. We hold that they were not. The relevant portions of the mortgage executed by the bankrupt provide that it encumbered the described real estate,

"TOGETHER with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and also all buildings, structures, additions, improvements located thereon, together with and including all of the boilers, machines, heating plant, lighting plant, and all plumbing apparatus, fixtures, appliances, ventilating and air conditioning equipment, toilets, basins, electric heating and lighting plants, lighting fixtures, power machinery, plant or plants for running and operation of passenger or other elevators, including passenger and other elevators located in the buildings upon said lands, and all other machinery, appliances and apparatus now on said premises, either in renewal or replacement of fixtures, machinery, appliances and appurtenances originally installed on said premises, in connection with the operation thereof."

The mortgage also provided for the appointment of a receiver, in the event of default, for the purpose of operating the hotel and applying the rents and profits against the indebtedness to the mortgagee. The holding of the district court, that the mortgage encumbered the furniture, was based upon its belief that the parties were mortgaging "a going concern business." If such was the case, their intention was not manifested in the operative portions of the mortgage instrument; nor has it been shown that the parties had such an intention.

■ The instrument, in form, was a conventional real estate mortgage. The draftsman of the mortgage, perhaps out of an abundance of caution, included some items that would have been encumbered as fixtures without express mention. Greenwald v. Graham et al., 100 Fla. 818, 130 So. 608. See also Allstate Finance Corp. et al. v. Zimmerman et al., 5th Cir. 1964, 330 F.2d 740. Also specifically described were items, such as machines and appliances, that might not have been included in the mortgage property as fixtures. Yet no mention is made in the mortgage instrument of furniture and furnishings, which were clearly not affixed to the realty, and thus not encumbered as a part of the real property. See Greenwald v. Graham et al., supra, in which furniture is expressly distinguished from fixtures.

The cases relied upon by appellees to sustain their contention that the furniture and furnishings were encumbered are not persuasive on these facts. In Landau v. Sykes, 98 Miss. 495, 54 So. 3, the court held that certain items of office equipment were included within the description in the mortgage. In that case, however, the mortgage provided that "this conveyance is intended to include all of the property * * * in the possession of and owned and operated by * * * [the mortgagor], and constituting a part of its plant and equipment in the city * * *, whether herein specifically described or referred to or not." No such all-inclusive language is before us here. Appellees also cite 59 C.J.S. Mortgages § 190, pp. 244, 246, in which the proposition is stated that:

"Effect is accorded a manifested intention of the parties that a mortgage of a hotel or apartment building shall cover the entire establishment, furnished and equipped as a unit, or that it shall cover articles of personal property used in connection with the premises, even though they are not a part of the realty by affixation and are not acquired until after the execution of the mortgage."

This statement affords appellees little when there is a complete lack of any manifestation that an encumbrance of the furniture and furnishings was intended. In the same text it is stated that a mortgage of realty does not ordinarily cover personal property located on the premises unless there is a clause purporting to cover such property. 59 C.J.S. Mortgages § 190, p. 244.

■ There being no Florida cases dealing with the precise question presented for our consideration,[2] we look to the law of other jurisdictions. In Ex Parte Benevolent & Protective Order of Elks, 2nd Cir. 1934, 69 F.2d 816, the facts are similar to those in this case. The bankrupt executed a mortgage loan contract relating to a building to be erected by it. The mortgage had a clause covering "all appurtenant fixtures and articles of personal property now or hereafter attached to or used in connection with said premises, it hereby being expressly agreed that any and all property covered by the foregoing description shall be deemed to be * * * part of the real property of the Mortgagor * * *" On a petition by the bankruptcy trustee for turnover of the furniture, equipment and personal property, the court held that such property was not encumbered by the mortgage.

2. Caples v. Taliaferro, 144 Fla. 1, 197 So. 861, cited by appellant, dealt with other real estate, not described in the mortgage. There was no question of personal property in that case. The same is true of Alabama-Florida Co. v. Mays, et al., 111 Fla. 100, 149 So. 61, 91 A.L.R. 139. Although the standards of description are less exacting for chattel mortgages than for mortgages on realty, there still must be some means by which the property intended to be encumbered can be identified. First Nat. Bank of Panama City v. First Nat. Bank of Chipley, 90 Fla. 617, 106 So. 422. In Vanderpool Properties v. Hess & Slager, 100 Fla. 933, 130 So. 457, the furniture held to have been encumbered was specifically described in the instrument.

Howe & Rogers Co. v. Lynn, 2nd Cir. 1934, 71 F.2d 283, involved a mortgage on an apartment house. The court's opinion set forth the mortgage description in this language:

" 'All and singular the following real estate, goods, chattels, rights, privileges, franchises and other property.' Next came a description by metes and bounds of thirteen parcels of land, after which there followed this clause: 'It is understood and agreed that there is conveyed and transferred with all of the foregoing described real property any and all buildings, improvements and appurtenances now standing or at any time hereafter constructed or placed upon said parcels of land, or any part thereof, including all partitions, screens, awnings, window shades, dynamos, motors, engines, boilers, furnaces, vacuum cleaning system, fire prevention and extinguishing apparatus, refrigerating, heating, plumbing, ventilating, gas and electric light fixtures and elevators, and all curtain fixtures, ice boxes and ranges, if owned by the mortgagor, and all machinery, appliances, plants, apparatus and fittings and fixtures of every kind in any building now or hereafter standing on said premises or any part thereof.' "

The question was there presented as it is here presented, and there the question was resolved by the district court as it was resolved by the district court here, by a determination that the furniture was included in the mortgage description. In its opinion reversing, the Second Circuit said:

"While of course it is true that the intent of the parties is controlling in construing the language of a contract or deed, this canon is often misleadingly used. The private intents of the parties, even though they may be shown to be identical, are not the measure of their rights or duties; rather that meaning which the law will impute to the words they have used, which is, generally speaking, that which a reasonable person would suppose them to carry. Restatement of Contracts, § 233. In this mortgage the claimant must point to some words conveying the personal property, regardless of what the parties may have intended but did not express. McKeage v. Hanover Fire Ins. Co., 81 N.Y. 38, 37 Am.Rep. 471. There are no words which can be twisted to cover the furniture, unless it be 'fittings,' which at least in this context, is clearly not enough. Simmons v. Simmons, 6 Hare, 351; Pratt v. Paine, 119 Mass. 439."

The language quoted is applicable here. In the cited case the word "fittings" was used in the description and in this case it is not. In the mortgage before us the word "appliances" was used while in the mortgage of the cited case it was not. "Appliances" is no more descriptive of hotel furniture and furnishings than is "fittings."

Since the furniture and furnishings were not covered by the mortgage, and the foreclosure sale, and confirmation, were of the property as described in the mortgage, we are unable to find any basis for the application of the res judicata principle. Cf. Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898.

The determination of the district court as to the right of set-off is affirmed. The adjudication that the appellees acquired the hotel furniture and furnishings at the foreclosure sale is reversed. The cause will be remanded for further proceedings pursuant to this opinion.

Affirmed in part, reversed in part, and remanded.