WILLIAM H. STEPHENSON, *Appellant*, v. THE NATIONAL BANK OF WINTER HAVEN, *et al., Appellees.*

Division B.

Opinion Filed July 24, 1926.

1. Waste is the destruction or material alteration of any part of a tenement by a tenant for life or years to the injury of the person entitled to the inheritance; an unlawful act or omission of duty on the part of the tenant which results in permanent injury to the inheritance; and as any spoil or destruction done or permitted with respect to lands, houses, gardens, trees or other corporeal hereditaments by the tenant thereof; to the prejudice of him in reversion or remainder, or in other words to the lasting injury of the inheritance.

2. The terms waste and trespass are often confused. Trespass may be generally said to be the injury to or use of the property of another by one who has no authority or right whatever to do so, while waste is an abuse or destructive use of the property by one in rightful possession.

3. Under the common law any alteration of the buildings on leased premises by a tenant for years was waste, regardless of whether the alteration was beneficial to the owner of the reversion. This is the rule in Florida.

4. Injunction is available as a remedy under the law of this State to stop waste.

5. The finding of the chancellor on the facts will not be disturbed unless an abuse of discretion is clearly made to appear.

6. When on petition for intervention one is specifically made a party to a cause by the decree of the chancellor and the intervenor then actively participates in and becomes the main party defendant to said cause, he cannot afterwards complain because the bill was not physically amended to make him a party thereto.

An appeal from the Circuit Court for Polk County; H. C. Petteway, Judge.

Affirmed.

*Johnston & Garrett* and *G. P. Garrett*, Attorneys for Appellant.

*Allen E. Walker* and *A Summerlin*, Attorneys for Appellee.

TERRELL, J.—September 1st, 1922, B. A. Harris leased to C. J. Runkle ''Seventy-four feet off the east end of concrete building located on the corner just across the street and north of the First State Bank Building,'' being part of the following described real estate, to-wit: Lots fourteen (14) and fifteen (15) of Block three (3), Tier four (4) of the original town of Winter Haven, Florida, according to plat thereof duly recorded in the public records of Polk County, Florida, in Deed Book ''M'' at page 160. The said described lands were subsequently, on June 25th, 1924, sold by B. A. Harris, to appellee, The National Bank of Winter Haven, subject to said lease, which was on November 27th, 1925, assigned by C. J. Runkle to appellant, William H. Stephenson.

The term of the lease was five years, and the consideration was Six Thousand Dollars ($6,000.00), to be paid in sixty monthly installments of One Hundred Dollars, each, to be paid on the first day of each and every month, beginning September 1st, 1922. ''And to make no unlawful, improper or offensive use of the premises, and to quit and deliver up the said premises at the end of said term, in as good condition as they are now (ordinary wear and decay and damages by the elements only excepted). And the said lessee hereby agrees that if default shall be made in the rent as aforesaid then he shall become tenant at sufferance, hereby waiving all right of notice.'' Other portions of the lease are not material here.

Stephenson immediately took charge of the premises pursuant to the terms of the lease and commenced certain alterations in the building by constructing partitions on the interior and making some large openings in the exterior walls for the purpose of turning it into an ''arcade building'' for rental purposes. The National Bank of Winter Haven, appellee, filed its bill seeking to enjoin Stephenson from making any ''further change or alteration in the walls, front, ceiling, roof or any part of the building,'' and for compensation for waste so committed thereon. A temporary restraining order was granted. A motion to dissolve the temporary restraining order and a motion to proceed regardless of the temporary restraining order were both denied. Appeal is taken from the order granting the temporary injunction, the order denying the motion to dissolve the said temporary injunction and the order denying the motion to proceed regardless of the temporary restraining order.

Appellant first contends that the bill is wholly without equity as a bill to enjoin trespass and cannot be regarded, on account of its allegations, as a bill to enjoin waste.

This contention as to trespass is grounded on the allega-tion in the bill to the effect that no money for rent was tendered the complainant or any one for it as per terms of said lease on the 1st, 2nd, 3rd or 4th of December, 1925, and that by reason thereof the defendants are tenants at sufferance, if tenants at all. The record shows that the monthly rental payments were frequently a few days late, but that they were always accepted by the complainant without protest. This allegation of the bill is therefore without equity, but we think the bill may be treated as one to enjoin waste.

Waste has been often defined by the courts and the text writers. In 27 R. C. L. 1011, it is said to be the destruc-tion or material alteration of any part of a tenement by a tenant for life or years to the injury of the person en-titled to the inheritance; as an unlawful act or omission or duty on the part of the tenant which results in permanent injury to the inheritance and as any spoil or destruction done or permitted with respect to lands, houses, gardens, trees or other corporeal hereditaments by the tenant there-of; to the prejudice of him in reversion or remainder, or in other words to the lasting injury of the inheritance.

The terms waste and trespass are often confused. Tres-pass may be generally said to be the injury to or use of the property of another by one who has no authority or right whatever to do so, while waste is an abuse or destruc-tive use of the property by one in rightful possession. Wil-liamson v. Jones, 43 W. Va., 562, 27 S. E. Rep. 411, 38 L. R. A. 694.; Hayman v. Rownd, 82 Neb. 598, 118 N. W. Rep. 328, 45 L. R. A. (N. S.) 623; Brigham v. Overstreet, 128 Ga. 447, 57 S. E. Rep. 484, 11 Ann. Cas. 75, 10 L. R. A. (N. S.) 452; 27 R C. L. 1012.

Under the common law any alteration of the buildings on leased premises by a tenant for years was waste, regard-

less of whether the alteration was beneficial to the owner of the reversion. This is the rule in Florida and many other states, though some of the more modern cases apply the rule to the effect that it is not waste to make an alteration in a building if it can be done without destroying or materially injuring the building or changing its nature so as to make it impossible to restore the premises at the end of the term substantially as the tenant received them. 27 R. C. L. 1018.

The lease here brought in question provided that the lessee "quit and deliver up the said premises at the end of said term, in as good condition as they are now (ordinary wear and decay and damage by the elements only excepted.") We find nothing in this language or elsewhere in the lease that would lift this case out of the rule here announced, or that would authorize the tenant without the consent of his landlord to make material changes or alterations in the building to suit his taste or new exigencies that may have arisen in the course of his business. Stephenson however bases his right to alter the building on a subsequent verbal agreement with the president and one of the directors of the bank which will be discussed later.

The record shows that Stephenson was in rightful possession of the premises in question. The bill in effect alleges that the alterations being made and contemplated, completely changed the plan and style of the building, that defendants ought to be restrained from making any other changes or alterations in said building, and also restrained from committing any further or other waste, spoil or destruction in and about the said estate, premises and building, or any part thereof.

We think the order of the court on the petition of Stephenson to intervene to all intents and purposes made him

a proper party defendant to this suit, that the allegations of the bill if true state a cause of action, and that regardless of the irreparability of the damages or the insolvency of the tenant charged with committing waste, injunction was available as a remedy on the part of the complainant. Woolworth Co. v. Nelson, 204 Ala. 172, 85 South. Rep. 449; Agate v. Lowenbein, 57 N. Y. 604; Abel v. Wuesten, 143 Ky. 513, 136 S. W. Rep. 867; Brigham v. Overstreet, 128 Ga. 447, 57 S. E. Rep. 484, 11 Ann. Cas. 75; 10 L. R. A. (N. S.) 452, where the subject is fully treated.

This brings us to a consideration of the controlling question involved in this litigation which may be stated as follows: Does the record show that Stephenson had an agreement to make the contemplated alterations in the building? The answer to this question determines whether or not the temporary restraining order was providently granted.

Stephenson in his answer or cross complaint alleges that before taking over the lease he consulted the president and one of the directors of the appellee bank and explained to them his purpose in taking over the lease and the alterations he proposed to make in the condition of said building, and also submitted to them a sketch or plan of said alterations and full details as to the exact changes in the condition of the said premises that would be necessary in order for him to get any value out of the lease on said premises, all of which proposed changes or alterations were agreed to by them.

The bank acquired the fee in the premises subject to the Stephenson lease, and if the president and director were authorized to enter into such an agreement with Stephenson this defense if proven was ample to resist the restraining order. The record shows that Stephenson testified positively to all these facts, but the president of the bank

and the director flatly contradicted all of Stephenson's testimony as to any suggestion of change or alteration in the exterior walls of the building, no detail of such changes or alterations was offered in evidence and there is nothing in the testimony or the record to show that the proposed openings in the walls were essential to or might have been reasonably contemplated as a necessary part of the interior alterations. The temporary restraining order as amended permitted the interior alterations to go on but stopped any further alterations in the exterior walls. The Chancellor in other words found that an agreement had been made to alter the interior of the building, but that no agreement had been made as to the exterior. This finding was solely on the testimony and no abuse of discretion being made to appear we are unable to say that the Chancellor committed error.

Appellant lays great stress on the assignment to the effect that he, Stephenson, has not been properly made a party to this cause.

On this point the controlling facts are that the original bill was brought against C. J. Runkle and Tampa Beach Incorporated. Stephenson filed his petition to intervene and the order of the Chancellor on his petition for intervention specifically makes him a party to the bill of complaint and authorizes him to file his answer thereto. The answer was filed. Stephenson subsequently moved to dissolve the temporary restraining order, filed various pleadings in the cause and in fact after the order allowing him to intervene, he became the sole and only party defendant participating in the case. We have examined Bigelow v. Stringfellow, 25 Fla. 366, 6 South. Rep. 816, and other authorities cited by appellant in support of this contention and do not think they are controlling as to this case. It would further be an ultra refinement in the art of plead-

ing after all the proceedings participated in by appellant here to now hold that error was committed because the bill had not been in effect physically amended to make him a party thereto.

The decree of the Chancellor on all three orders appealed from is therefore affirmed.

Affirmed.

WHITFIELD, P. J., AND BUFORD, J., concur;

BROWN, C. J., AND ELLIS AND STRUM, J. J., concur in the opinion.